# In the United States District Court
## for the
## Western District of Texas

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | SA-10-CR-279 |
| | § | |
| RICKY FLORES | § | |

## ORDER

Defendant is charged in an indictment with possession of a firearm (shotgun) by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 942(a)(2). He filed a motion to suppress the shotgun and verbal statements he made, arguing (1) the warrant was not based on probable cause, (2) the affidavit in support of the warrant did not provide a "substantial basis that heroin would be found at 536 S. San Ignacio or in the possession of Mr. Flores"; (3) the affidavit failed to adequately state that the confidential informant was credible or reliable; (4) the affiant failed to corroborate the informant's tip; and (5) the affidavit was "bare bones." Defendant also argues that any verbal statement he made was not given voluntarily. An evidentiary hearing was held on August 24, 2010.

## BACKGROUND

On November 10, 2009, then San Antonio Police Detective[1] K. Williamson

---

[1] He has been promoted since then.

provided an affidavit for search warrant to a Bexar County Magistrate.  The

affidavit stated, in part, as follows:

> Williamson ... has good reason to believe that ... at ... 536 S. San
> Ignacio ... and [at] a 2003 Ford Explorer bearing Texas License
> Plate #80KSY9 ... under the control and in the charge of ... Ricky
> Flores ... and Julia Jimenez ... [is] where a controlled substance, to
> wit, heroin is unlawfully possessed....
>
> Affiant did on this 10th day of November, 2009, receive information
> from a credible individual who is currently facing pending criminal
> charges and provided the information with the expectation that the
> individual's cooperation with law enforcement would, if proven
> valid, be called to the attention of authorities, for the possible
> dismissal of charges, or a favorable plea bargain sentence.... Affiant
> believes that in this instance it adds to the credibility of the
> individual, because the individual will not benefit if their
> information does not prove valid.  Affiant explained to the
> cooperating individual that it jeopardizes their [sic] opportunity for
> leniency if law enforcement believes or discovers that the individual
> has provided incorrect information in a bad faith attempt to claim
> leniency....  The affiant also explained to the credible individual
> Texas Penal Code Statute 37.08, False Reports to Peace Officer,
> describing the possible criminal penalties for giving false
> information to law enforcement.  The credible individual said that
> they [sic] understood, and continued to maintain that the
> information is correct.
>
> The affiant knows that this credible individual is familiar with
> various controlled substances, to wit, heroin, and the individual
> knows how heroin looks and smells, and how it is packaged, sold
> and used.  The credible individual has demonstrated their [sic]
> knowledge to the affiant in conversation and this knowledge is
> consistent with my own experience and knowledge regarding this
> type of controlled substance.
>
> The credible person stated that they [sic] did within the last 48
> hours see a controlled substance, to wit heroin, in the possession of
> ... Ricky Flores and Julia Jimenez inside the location at 536 S. San
> Ignacio....
>
> I received information that a Hispanic male named "Ricky" and his

girlfriend live at 536 S. San Ignacio and are known to traffic large amounts of heroin. "Ricky" was described as a Hispanic male in his 20's and has multiple tattoos. In addition, it was reported that "Ricky" is known to drive and transport heroin in his girlfriends [sic] Ford Explorer. Surveillance was established on this location multiple times in an effort to verify this information that was received. While this location was under surveillance I observed a 2003 Ford Explorer bearing TX LP#80KSY9 parked in the driveway at 536 S. San Ignacio. A Hispanic male matching the description of "Ricky" was observed exiting the front door at 536 S. San Ignacio and get into the above listed Ford Explorer and leave the location. Rolling surveillance was maintained on this vehicle until it was stopped for a routine traffic violation at which time the driver was positively identified as Ricky Flores. While at the scene of the traffic stop a female walked up to the scene who was identified as Julia Jimenez. Julia Jimenez told the officers at the scene that she lives at 536 S. San Ignacio. When the officers asked Ricky Flores where he lived, he stated that he sometimes stays with his girlfriend.

Computer research was also conducted which revealed that Ricky Flores has been arrested multiple times for possession with intent to distribute narcotics. Also Julia Jimenez was arrested under SAPD case #90-799576 for being in possession of approximately 210 grams of heroin. Under this same case a search of 536 S. San Ignacio was conducted where a scale and packaging were also seized. Under SAPD case #90-732668 a person was arrested a near [sic] 536 S. San Ignacio and was found to be in possession of over 190 grams of heroin and this person told police that he had just left 536 S. San Ignacio.

Based on the information that was received from the confidential source and that was verified via computer research, the affiant believes that the above listed persons are in possession of heroin at 536 S. San Ignacio.

Based upon this affidavit a Bexar County Magistrate signed a search warrant. The search warrant was executed on November 12. A shotgun was found at the residence. According to the testimony of Detective Williamson, after *Miranda* warnings were given, the Defendant notified him where the shotgun was located and acknowledged that it belonged to him.

3

**ANALYSIS**

A.    Generally

A probable cause determination is a "practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir. 1994).

Where a search warrant is involved, the Court employs a two-step process. *See United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999). First, we determine whether the good-faith exception to the exclusionary rule applies. *See id.* The good-faith exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded. *See United States v. Leon*, 468 U.S. 897, 919-20, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

If an affidavit is based on information supplied by a confidential informant, the Court examines the informant's veracity and basis of knowledge to determine if, in the "totality of the circumstances," his information is credible. *See United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992).

B.    Good-faith exception to the exclusionary rule applies

The contents of Detective Williamson's affidavit are very similar to those found adequate in *U.S. v. Ramirez*, 247 Fed. Appx. 515 (5th Cir. 2007).  In *Ramirez*, the Fifth Circuit concluded "that there was sufficient evidence in the

affidavit to objectively justify the officers' reliance on the magistrate's independent probable-cause determination. The information set forth in the affidavit about Ramirez's possession of methamphetamine did not come from an anonymous tip; it was information that a known individual had provided. The affidavit recounted activities that the informant had witnessed himself or herself. The informant appeared to be knowledgeable about methamphetamine; indeed, Detective Gomez had information that the informant sold methamphetamine. The informant had been warned of the possible danger he or she might face if law enforcement discovered that the information was untrue. And Detective Gomez verified that the address given by the informant was Ramirez's. Regardless of whether all of this together actually amounts to probable cause to believe that Ramirez possessed methamphetamine at his home, it is beyond the realm of mere conclusory statements and is sufficient for a magistrate to make a probable-cause determination.... The affidavit was therefore not bare bones, and the officers' reliance on the magistrate's probable-cause determination was not objectively unreasonable. Consequently, the good-faith exception to the exclusionary rule applies, and the district court's denial of the motion to suppress was not erroneous." *Id.* at 518-19. *See also U.S. v. Cordero*, 465 F.3d 626, 630 (5th Cir. 2006) ("We conclude that the affidavit is not so 'bare bones' that the good-faith exception is inapplicable. The deputy's affidavit alleges recent, personal observation of cocaine in Cordero's residence by an informant who had demonstrated his/her ability to identify Cocaine and related paraphernalia. The informant also identified the residence, car, and

5

'outer premises,' and this information was confirmed by the deputy. Thus, according to the affidavit, the deputy tested the informant's reliability both as to his or her ability to identify cocaine and as to the details of the location where the cocaine was reportedly observed. Given the informant's report of recent, personal observation of cocaine, the informant's demonstrated ability to identify cocaine, the premises details conveyed to the deputy, and the deputy's successful efforts at corroboration, we conclude that the good-faith exception to the exclusionary rule applies.").

In this case, Detective Williamson stated in his affidavit that on November 10, 2009, he received information from an individual that he/she saw heroin at 536 S. San Ignacio in the possession of Ricky Flores and Julia Jimenez. Det. Williamson further testified that the CI was currently facing pending criminal charges and "provided the information with the expectation that the individual's cooperation with law enforcement would, if proven valid, be called to the attention of authorities, for the possible dismissal of charges, or a favorable plea bargain sentence." Det. Williamson explained to the CI that if he was lying or incorrect that would jeopardize his plea negotiations. Det. Williamson also explained to the CI that there were criminal penalties for giving false information to law enforcement pursuant to Texas Penal Code § 37.08. Det. Williamson verified that the CI knew what heroin was, and how it is packaged, sold and used. The CI described "Ricky" as a Hispanic male in his 20's with multiple tattoos, who transported heroin in his girlfriend's Ford Explorer. Det. Williamson established surveillance at the home multiple times to verify the

6

information he received from the CI. While at the home he observed a 2003 Ford Explorer bearing TX LP#80KSY9 parked in the driveway. He saw a Hispanic male matching the description of "Ricky" exit the front door and enter a Ford Explorer. Rolling surveillance later stopped the Ford Explorer for a routine traffic violation and the driver was identified as Ricky Flores. Julia Jimenez later arrived at the traffic stop and told the officers she lived at 536 S. San Ignacio. When the officers asked Ricky Flores where he lived, he stated that he sometimes stays with his girlfriend.

Det. Williamson also did computer research to corroborate the CI's information. Det. Williamson discovered that Ricky Flores had been arrested multiple times for possession with intent to distribute narcotics. He also discovered that Julia Jimenez was arrested under SAPD case #90-799576 for being in possession of approximately 210 grams of heroin. Under this same case a search of 536 S. San Ignacio was conducted where a scale and packaging were also seized. Under SAPD case #90-732668 a person was arrested near 536 S. San Ignacio and was found to be in possession of over 190 grams of heroin and this person told police that he had just left 536 S. San Ignacio.

The affidavit was not "bare bones", the CI had personal knowledge of heroin present at the address, Det. Williamson corroborated the CI's information, and the officers' reliance on the magistrate's probable-cause determination was not objectively unreasonable.[2]

_____

[2] Defendant urges us to consider *U.S. v. Pope*, 452 F.3d 338 (5th Cir. 2006), arguably for the proposition that the good faith exception to exclusionary rule should not apply, Defendant's reliance on this case is misplaced. That decision was withdrawn and superseded

C.      Williamson's affidavit was not "recklessly false"

Defendant also argues that Det. Williamson knowingly and intentionally, or with reckless disregard for the truth, omitted material information from his affidavit.

In his affidavit, Det. Williamson referenced SAPD case number 90799576 and stated that Julia Jimenez had been arrested in that case for possession of 210 grams of heroin.  Defendant appears to argue that Det. Williamson falsely represented to the magistrate that Ms. Jimenez was arrested at 536 S. San Ignacio, when in fact she was arrested near 500 Old Highway 90.   Det. Williamson made no such representation to the magistrate.  He merely stated that Ms. Jimenez had been arrested.  This is factually accurate.  Det. Williamson then also told the magistrate "[u]nder this same case a search of 536 S. San Ignacio was conducted where a scale and packaging were also seized."  This is also accurate.  After her arrest near Old Highway 90, Ms. Jimenez was taken to her residence at 536 S. San Ignacio and she gave consent to search the residence. While inside the residence she handed over 210 grams of heroin that she had hidden in her bra.  A scale and plastic bags were also seized from the residence.[3]

In his affidavit, Det. Williamson also referenced SAPD case number

---

by *U.S. v. Pope*, 467 F.3d 912 (5th Cir. 2006) (search warrant affidavit was not bare bones; good faith applied).  Defendant also relies upon *U.S. v. Barrington*, 806 F.2d 529 (5th Cir. 1986).  In *Barrington*, the affidavit stated only that Captain Solomon "received information from a confidential informant" who is "known to Captain Phil Solomon and has provided information in the past that has led to arrest and convictions."  The Fifth Circuit concluded that affidavit  was "bare bones."  As detailed above, Det. Williamson's affidavit contained statements that the CI personally observed heroin at the premises within the last 48 hours and Det. Williamson's corroborated the information.

[3] See Defendant's EX. 3.

90732668 and stated that a person was arrested for possessing 190 grams of heroin near 536 S. San Ignacio and that person told police that he had just left that address.  This is factually accurate. On September 27, 2009, a person was arrested on the 5200 block of El Paso Street for possessing 123.9 grams of heroin.[4]  Those locations are about one block from each other.

Defendant's argument that Det. Williamson knowingly and intentionally, or with reckless disregard for the truth, omitted material information from his affidavit lacks merit.

D.      Voluntariness of statements made by Defendant

Defendant argues that after police officers entered the home he was not given his *Miranda* warnings.  He further argues that he was "singled out", repeatedly questioned, it was a "high-pressure atmosphere", and police threatened to jail his girlfriend and family members.

Det. Williamson testified at the evidentiary hearing that after SWAT officers secured the home they left and thereafter he gave *Miranda* warnings to the Defendant, his girlfriend and others found inside the home.  He further testified that he individually asked each individual whether they understood the *Miranda* warnings and that the Defendant acknowledged understanding his *Miranda* rights.  Defendant did not provide any evidence to the contrary.

A valid *Miranda* waiver requires two distinct components. "First, the relinquishment of the right must have been voluntary in the sense that it was

---

[4] See Defendant's EX. 4.

9

the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005) (citation omitted). "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (citation omitted).

Det. Williamson testified that after the SWAT team secured the premises they left the residence. Defendant and others were in the kitchen area when Det. Williamson read *Miranda* warnings to the group. Then he asked each individual whether or not he or she understood their *Miranda* rights. Det. Williamson testified that he asked the Defendant whether he understood his rights and that the Defendant acknowledged that he did. The Defendant only provides conclusory statements, but no evidence of intimidation, coercion, or deception. "The Government has the burden of proving, by a preponderance of the evidence, that a defendant voluntarily waived his rights and that his statements were made voluntarily." *United States v. Mullin*, 178 F.3d 334, 341 (5th Cir. 1999). The Government has met its burden. The Court finds that Defendant waived his *Miranda* rights and cooperated with authorities freely.

### Conclusion

Defendant's Motion to Suppress (docket no. 27) is DENIED.

It is so ORDERED.

SIGNED this 30th day of August, 2010.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

11